FILED
29
mailroom
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

Civil Action No. 1:26-cv-02459-LMB-WEF

**JOSEPH L. HICKEY III,**

Plaintiff,

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO,**

Defendant.

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF 9)

## INTRODUCTION

GEICO focuses its qualification and survey-impact arguments on survey performance in Plaintiff's current call-center role. ECF 10 at 5–8. In § III.B, it groups Counts II, III, and IX as disparate-impact claims, although its opening list identifies Count IX as disparate treatment. ECF 10 at 3, 6–8. The FAC pleads distinct theories: Count II's individual screen-out, Count III's broader disparate impact, and Count IX's intentional use of bias-revealing surveys. The Court should assess each count under its own allegations and elements.

GEICO says FAC ¶22 admits that Plaintiff's psychiatrist found him unable to perform basic customer-service requirements. ECF 10 at 5. But ¶22 attributes the "unable to interact with customers" formulation to GEICO's EEOC Position Statement, expressly disputes it, and describes the psychiatrist as reporting occasional survey-reflected communication difficulties. FAC ¶¶21–23. The FAC alleges Plaintiff never claimed a global inability to interact with

customers; reading ¶22 as GEICO asserts reverses its meaning. Later Liberty Mutual results further corroborate Plaintiff's ability to perform customer-facing work. FAC ¶24.

The Court should analyze Counts I and XI under their distinct federal and state accommodation statutes; recognize Count II's individual challenge under 42 U.S.C. § 12112(b)(6); and separately evaluate Counts III and IX under their own disparate-impact and intentional-use theories. No one theory's elements should be imported into another. The Court should deny dismissal with prejudice or, if a count needs particularity, allow a focused Rule 15 amendment.

## I. RULE 12(b)(6) REQUIRES THE COURT TO ACCEPT THE FAC'S FACTS, NOT GEICO'S COMPETING STORY

A complaint survives when its well-pleaded facts permit a reasonable inference of liability; it need not prove the claim or establish a prima facie case. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57 (2007). The Court accepts factual allegations as true and draws reasonable inferences for Plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Pro se pleadings receive liberal construction, while still needing factual matter that makes relief plausible. Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020).

GEICO asks the Court to adopt its competing inferences about performance, the doctor's note, accommodation, and the active process, and calls the resignation voluntary despite the FAC's allegations of medical deterioration and unsafe conditions. FAC ¶¶21–24, 30, 34–46, 62–78, 87–93, 113–15, 146–149. Rule 12 does not permit the Court to prefer GEICO's account.[1]

[1] Compare ECF 10 at 2, which cites FAC ¶30 as an admission of poor survey scores although ¶30 identifies remembered call-opening comments; id. at 5, which turns ¶22's occasional survey-related communication difficulties into an alleged inability to perform essential functions despite

Review is generally confined to the complaint and documents attached, incorporated, or integral and authentic to it. Goines v. Valley Community Services Board, 822 F.3d 159, 164–66 (4th Cir. 2016). Plaintiff need not attach GEICO-controlled survey records or medical proof to obtain the pleaded inferences; proof comes later.

## II. THE COURT SHOULD REJECT GEICO'S CONFLATION AND ANALYZE EACH COUNT SEPARATELY

GEICO's page 3 summary calls Count IX 'ADA Disparate Treatment,' but §III.B groups Counts II, III, and IX as disparate impact. ECF 10 at 3, 6–8; FAC ¶160. It also relies on coaching and an active process against accommodation, casts the VEC allegations as ordinary benefits advocacy, and recasts Count XI as VHRA retaliation under a provision it says Plaintiff omitted. ECF 10 at 4–6, 11, 10 n.7, 12. Apply each count's pleaded conduct, injury, and statute.

The claims remain distinct: Count I challenges failure to modify the application process; Count II, an individual screen-out criterion under 42 U.S.C. § 12112(b)(6); Count III, the impact of the five-feature survey composite and its cross-job use; Count IV, intentional disability discrimination; Count V, ADA retaliation; Count VI, hostile environment; Count VII, constructive discharge from discrimination and retaliation; Count VIII, interference under 42 U.S.C. § 12203(b); Count IX, knowing adoption of surveys revealing disability bias; Count X, VHRA discrimination; and Count XI, Virginia disability-accommodation protections. FAC ¶¶ 111–72.

---

¶21's express denial of global inability; and id. at 9, which attributes the resignation to Plaintiff's own voluntary choice despite ¶¶87–93, 146–49. At Rule 12, GEICO's competing characterizations do not displace plausible pleaded facts.

Rule 10(b) favors separate counts when they clarify; Rule 8(d)(2)–(3) permits alternative theories. Shared facts do not erase distinct elements or injuries. The Court should construe each count from its actual allegations and statutory basis. Plaintiff does not argue that headings alone control; he asks the Court to apply each theory's own elements.

**III. THE FAC PLAUSIBLY ALLEGES THAT PLAINTIFF COULD PERFORM THE POSITIONS AT ISSUE**

GEICO treats the survey metric from Plaintiff's current call-center job as dispositive of qualification for different jobs. The ADA asks whether he could perform the essential functions of the position held or desired, with accommodation. 42 U.S.C. § 12111(8). The FAC alleges Dr. K recommended waiving the survey prerequisite only for non-call-center applications; Plaintiff accepted the current-role standard, sought no guaranteed interview or placement, and met posted requirements for two identified analyst positions and at least one other opening. FAC ¶¶ 35-38, 43-46, 112-15, 168-69. It also alleges a Master's in Business Management, over four years at GEICO, promotion to Service Representative IV, and strong productivity. Id. ¶¶ 16-17. Together, those allegations plausibly support qualification to compete for the identified openings; Plaintiff claims no right to selection, and GEICO's metric cannot replace a vacancy-specific inquiry. The current-role metric alone does not decide qualification for those jobs.

The FAC describes occasional survey-reflected communication difficulties, not inability to perform customer service. FAC ¶¶21–23; ECF 10 at 5 reverses that allegation. The later Liberty Mutual figures—1,479 calls, 68 behavioral surveys, a 100-percent behavioral score, and 118.4 percent of goal—corroborate Plaintiff's customer-facing ability and rebut an assertion of permanent, global incapacity. FAC ¶24. Because they concern another employer and a later period, they do not alone resolve qualification for the GEICO positions at issue.

The FAC alleges that by May 12 another call-center shift was physically and psychiatrically unsafe, while distinguishing that acute inability to continue from permanent inability to work or perform another position. FAC ¶¶ 87-91, 147-49. That resignation-time allegation concerns the unaccommodated call-center job; the application-access claim concerns desired non-call-center jobs when GEICO applied the posting barrier. Id. ¶¶ 35-46, 112-16, 168-69. At summary judgment, *Jessup v. Barnes Group, Inc.* held that clear admissions of inability defeated termination and accommodation claims for that later period, but did not defeat qualification for earlier hostile-environment events. 23 F.4th 360, 368 (4th Cir. 2022). The Court should not collapse these distinct positions and times into a global-incapacity admission.

A customer-survey score alone does not establish inability to perform essential functions. The FAC alleges surveys supplied roughly half the rating, only "excellent" counted as passing, and GEICO provided no meaningful appeal, correction, neutral review, or bias screening. FAC ¶¶ 25–30. It alleges customers could withhold "excellent" because of disability-linked speech, tone, pace, affect, tics, or psychiatric presentation, distinguishing adverse reactions from deficient service. FAC ¶¶ 27, 29, 82. Whether a score reflected legitimate criticism or disability bias, and whether the measure related to positions sought, cannot be decided for GEICO on this motion.

## IV. GEICO'S MOTION DOES NOT WARRANT DISMISSAL OF ANY COUNT

### A. Count I plausibly alleges a failure to accommodate equal access to apply

Count I challenges an automatic survey threshold that allegedly barred applications to materially different non-call-center positions where the call-center metric was not job-related. FAC ¶¶ 35–38, 43–46, 111–16. Plaintiff sought to modify the posting rule, not to be selected, bypass lawful vacancy requirements, change current-job standards, or remove surveys from

customer-service work. GEICO's argument about current-role performance addresses a different request.

Jacobs v. N.C. Admin. Office of the Cts., 780 F.3d 562, 579 (4th Cir. 2015) (summary-judgment appeal), states the familiar failure-to-accommodate prima facie elements: disability, employer notice, qualification with reasonable accommodation, and refusal. These inform the merits; Rule 8 governs pleading. The FAC plausibly alleges each: known disability and limitations; qualification for positions desired; a specific application-access modification; and categorical rejection, mismatched paperwork, no role-specific review of identified vacancies, and no effective alternative. FAC ¶¶ 34–46, 62–78, 112–16. The ADA regulation expressly includes modifications to the job-application process that enable a qualified applicant with a disability to be considered for a desired position. 29 C.F.R. § 1630.2(o)(1)(i). The statute separately identifies modifications to examinations, training materials, and policies among reasonable accommodations, 42 U.S.C. § 12111(9)(B), and prohibits denying employment to an otherwise qualified individual because accommodation is needed, id. § 12112(b)(5)(B).

An employer may choose among effective reasonable accommodations. Smith v. CSRA, 12 F.4th 396, 414 (4th Cir. 2021); Reyazuddin v. Montgomery County, 789 F.3d 407, 415 (4th Cir. 2015). But FAC ¶¶62–78 allege GEICO's coaching addressed current-role performance while leaving the posting barrier, which Plaintiff expressly said it could not remove. Coaching that leaves applications blocked is not an effective alternative. The interactive-process failure is not freestanding but is relevant if it prevented identification of an effective accommodation.

Jacobs, 780 F.3d at 581. The injury alleged is the substantive denial of application access, not imperfect paperwork.[2]

GEICO cites Hannah P. v. Coats, 916 F.3d 327, 337–38 (4th Cir. 2019), for the proposition that an active process defeats delay. The issue is not May 1 email silence or an eleven-day delay alone: the FAC says no response was necessary because the email memorialized the conversation. FAC ¶67. Rather, the FAC alleges GEICO's internal note recorded Plaintiff wanted the metric excluded only for postings, HR said the survey and approximately 77-percent posting threshold could not be removed or waived, and GEICO's May 12 internal answer preserved "normal prerequisites" after resignation without deciding an ADA exception. FAC ¶¶ 62–69, 75–77. It also alleges identified vacancies, medical support, and no timely role-specific review or actionable application access. Id. ¶¶ 34–46, 74–78. The pleaded categorical response and absence of position-specific consideration—not silence by itself—distinguish an active individualized process; the Court cannot resolve that factual issue against Plaintiff on a motion to dismiss.

Plaintiff sought access to apply, not guaranteed promotion, automatic placement, or a lower current-job standard. FAC ¶¶37–38, 45, 78. The regulation recognizes modifications to application processes. 29 C.F.R. § 1630.2(o)(1)(i). GEICO remained free to apply ordinary,

---

[2] Plaintiff does not contend he may reject an effective accommodation that removes the barrier. The FAC identifies insomnia (¶18) and alleges coaching could not cure involuntary symptoms, change already-accrued survey history, or remove the application gate (¶¶66, 71–72). The barrier was existing history and the gate; future-call coaching did not address insomnia or alter scores already used.

vacancy-specific requirements; the question is whether the cross-job metric was job-related or a case-by-case exception was reasonable.

**B. Count II states an individual screen-out claim; Count III pleads a distinct impact theory**

Count II invokes 42 U.S.C. § 12112(b)(6), which prohibits qualification standards, employment tests, or other selection criteria that screen out or tend to screen out "an individual with a disability or a class of individuals with disabilities," unless the criterion, as used, is job-related for the position in question and consistent with business necessity. The disjunctive text expressly reaches an individual challenge; a plaintiff need not represent a class. The separate business-necessity defense in 42 U.S.C. § 12113(a) also addresses whether performance can be accomplished by reasonable accommodation.

Sturgill v. Norfolk S. Ry. Co., 391 F. Supp. 3d 598, 609–10 (E.D. Va. 2019), a persuasive district-court decision GEICO itself cites, recognizes an individual challenge to a qualification standard under §12112(b)(6) when facts support either that the standard is unrelated to an essential function or that an exception would be a reasonable accommodation; see also Williams v. ABM Parking Servs., Inc., 296 F. Supp. 3d 779, 788–90 (E.D. Va. 2017). Sturgill's disparate-impact claim was first asserted in opposition; the court separately considered an individual screen-out route but rejected it because the complaint alleged neither ground and alleged no need for accommodation. Here, the FAC itself alleges an automatic cross-job prerequisite, different openings for which Plaintiff met posted requirements, a case-by-case modification limited to those applications, and the same standard for his current role. FAC ¶¶37–46, 74–78, 118–20. Those job-specific allegations plausibly support Sturgill's reasonable-exception route: an application-gateway exception could permit ordinary competition for different positions without

guaranteeing selection or relaxing the current-role standard. Count II's individual screen-out theory is distinct from Count III's broader disparate-impact claim.

Count III separately challenges the facially neutral five-feature composite under ADA §12112(b)(3)(A) (method of administration with discriminatory effect) and §12112(b)(6) (selection criteria that screen out). FAC ¶¶122–27. The composite combines subjective customer input, an excellent-only pass rule, roughly half the rating, recurring employment consequences, and no meaningful appeal or bias review. FAC ¶¶25–30, 122–24. The FAC alleges GEICO exported the score as a cross-job prerequisite without position-specific validation, causing a separate screen-out. FAC ¶¶125–26. The uses and injuries are pleaded independently and alternatively. Id. ¶126. Count III does not assume every customer or survey was biased; it alleges the uncorrected system gave disability-sensitive reactions employment force. Count II challenges an individual screen-out; Count IX requires knowing use of a bias-revealing survey.

GEICO faults the FAC for insufficient impact and causation facts, while acknowledging ADA impact claims do not categorically require Title VII statistics. ECF 10 at 7. FAC ¶¶25–30, 122–27 identify the composite, how it operated, and the alleged effects; GEICO-controlled data may later measure their scope. Most specifically, ¶123 alleges that even when a customer comment openly revealed disability bias rather than deficient service, GEICO had no way to remove, correct, or neutralize the survey and still counted it as valid performance data. FAC ¶¶25–30, 81–82, 124–27 allege surveys supplied half the rating, only excellent passed, and uncorrected scores affected ranking, discipline, termination risk, and applications for workers with communication-related disabilities. These concrete allegations answer GEICO's sufficiency challenge.

**C. GEICO materially misstates the survey allegations; Count IX is a separate intentional claim**

GEICO argues the FAC alleges no facts showing that bias-revealing surveys existed or affected Plaintiff. ECF 10 at 7–8. FAC ¶30 alleges Plaintiff recalled specific survey comments about how he spoke or presented, including a complaint concerning "call opening"; ¶¶157–60 separately allege GEICO controlled and used surveys whose comments or reasons revealed disability-linked presentation in employment decisions without a bias screen or appeal.

The FAC alleges remembered comments and GEICO controls the full survey records; Rule 12 does not require Plaintiff to attach a complete screenshot history or GEICO's records. Completeness concerns proof. Customer input is not inherently neutral. In the Title VII analogy, Chaney v. Plainfield Healthcare Center, 612 F.3d 908, 913–15 (7th Cir. 2010), rejects honoring customers' race-based preferences; it does not make every low score discriminatory, but supports that an employer cannot immunize its knowing use of customer bias.

Count IX is narrower than Count III: it alleges GEICO knowingly counted ratings whose comments or calls disclosed disability bias, adopting it in rankings and employment decisions. FAC ¶¶ 156-61. Count III challenges the composite's overall impact without requiring each survey to reveal bias; Count IX requires a bias-revealing survey and knowing use. Id. ¶ 160. Rule 8(d) permits both theories in the alternative.

Count IX alleges GEICO knowingly used bias-revealing ratings. FAC ¶157. GEICO allegedly knew of the manifestations, controlled and used the ratings without appeal or bias review. FAC ¶¶158–59. FAC ¶160 alleges disability was a but-for cause of that use.

Read together, the remembered survey complaint concerning "call opening" (FAC ¶30), the involuntary tics and communication manifestations that could affect customer perception (¶18), and the allegation that customers could withhold an excellent rating because of disability-linked presentation (¶27) support a plausible inference that the criticism targeted a disability-linked manifestation rather than service quality. *Iqbal*, 556 U.S. at 678.

**D. Count IV alleges intentional discrimination; the comparator method is not the only pleading route**

Count IV alleges that GEICO treated Plaintiff's medically supported request as categorically unavailable despite case-by-case exceptions, discouraged him from applying, redirected him toward materially lower-paid work, escalated performance action, and relied on stereotypes about psychiatric disability and customer interaction. FAC ¶¶ 32–46, 47–78, 128–33. It identifies statements by managers, their authority over applications and discipline, GEICO's failure to assess the medical nexus, and a later global "unable to interact" characterization. Id. ¶¶ 47–61, 130–32. Those are facts supporting discriminatory inference, not merely a recitation that Plaintiff is disabled.

GEICO challenges satisfactory performance and disability-based adverse action under the ADA, and separately argues that the VHRA claim lacks comparator allegations. ECF 10 at 8–10. The ADA's substantive elements are disability, qualification, and adverse action because of disability. Jacobs, 780 F.3d at 572. Jacobs recognizes direct or indirect proof, or McDonnell Douglas. Id. A plaintiff need not plead the full McDonnell Douglas prima facie case or identify a comparator when other facts plausibly support discriminatory intent. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002). Johnson v. Baltimore City, 163 F.4th 808, 813, 817–18 (4th Cir. 2026), a Title VII Rule 12 case, evaluated the comparator route the plaintiff chose and

identified direct evidence as an alternative; it does not make comparators a universal ADA pleading element. This FAC instead relies on decisionmaker statements, differential treatment of the medically supported exception, and employment consequences.

On Count IV, GEICO points to the survey metrics and says Plaintiff cannot attribute his voluntary resignation to GEICO. ECF 10 at 9. The FAC also alleges lost application access, lower-paid channeling, discipline, and threatened termination. FAC ¶¶43–46, 58–61, 129–33. Count VII separately alleges that the resulting conditions compelled resignation. Id. ¶¶146–49. The Court should assess these harms under the ADA's protection against discrimination in employment terms and conditions, 42 U.S.C. §12112(a), rather than require a completed termination or comparator. The FAC also disputes that poor survey scores accurately measured capacity. Id. ¶¶21–30.

**E. Count V plausibly alleges retaliation; the VEC allegations are not merely opposition to benefits**

Count V alleges protected requests for accommodation and opposition to disability discrimination, followed by a change in GEICO's conduct: instructions not to apply, pressure toward resignation or demotion, warnings, and escalated discipline tied to the disability-affected metric. FAC ¶¶ 134–39. Requesting an accommodation is protected activity. Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 706 (4th Cir. 2001). Under Burlington Northern & Santa Fe Railway Co. v. White, an action is materially adverse if it might dissuade a reasonable worker; the Fourth Circuit applies that standard to ADA retaliation. 548 U.S. 53, 68 (2006); Laird v. Fairfax County, 978 F.3d 887, 893 (4th Cir. 2020). The FAC alleges knowledge, timing, a concrete change in conduct, and a stated connection to the pending request—not merely the fact that GEICO processed paperwork.

GEICO argues that its response to the VEC was a reasonable defensive measure and that opposing unemployment benefits is not an adverse action on the pleaded facts. ECF 10 at 11. That argument does not address the pleaded theory. FAC ¶¶97–110 and 137 allege that the VEC requested Plaintiff's stated reason for resigning and the written resignation; GEICO allegedly replaced the letter's ADA explanation with a narrower account, acknowledged but withheld the source letter, and repeated the omission after an opportunity to correct it. The challenged act is the alleged selective omission and replacement of protected opposition, not GEICO's mere defense against benefits.

FAC ¶106 quotes GEICO as saying it was "not required to argue Mr. Hickey's case to the VEC on his behalf." That statement supports a counterfactual inference: if the resignation letter supported GEICO's voluntary-quit account and contained no ADA opposition, a factfinder could infer GEICO would have attached it; the stated no-duty-to-advocate rationale makes that inference plausible. The FAC alleges instead that the VEC requested the reason Plaintiff gave for resigning and the written resignation, but GEICO acknowledged and withheld the source letter, supplied a narrower account of his stated reason for leaving, and repeated the omission. FAC ¶¶97–102, 106–109. These alleged selective acts support an inference that protected opposition caused the challenged reporting—not simply GEICO's defense against a benefits application. Count V asserts no duty to advocate or accept constructive discharge; it challenges the alleged selective withholding and replacement of Plaintiff's ADA explanation.

GEICO cites Roman v. Cornell University, 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999), and Whalley v. Reliance Group Holdings, Inc., 2001 WL 55726, at *12 (S.D.N.Y. Jan. 22, 2001), to support its contention that its VEC response was not actionable. ECF 10 at 11. A persuasive EDVA Title VII pleading decision, Koger v. Woody, denied Rule 12 dismissal of a

retaliation claim alleging repeated VEC challenges based on a false sick-leave-abuse accusation, read with other retaliation allegations, and distinguished Roman and Baker as summary-judgment cases predating Burlington Northern. 2009 WL 2762610, at *4–5 (E.D. Va. Aug. 28, 2009). On appeal, the Fourth Circuit affirmed the later summary-judgment ruling on Title VII retaliation claims in an unpublished per curiam opinion without VEC-specific reasoning. Koger, 395 F. App'x 941 (4th Cir. 2010) (per curiam) (unpublished). Koger involved Title VII and different allegations, so it is persuasive by analogy only. Chapman v. Brentlinger Enters., 124 F.4th 382, 402–03 (6th Cir. 2024), recognizes false UI statements may be materially adverse, while noting the parties agreed truthful, legitimate opposition is not; Chapman arose under the FMLA at summary judgment. Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997), recognizes Title VII's post-employment protection. Count V's VEC theory remains distinct from workplace retaliation: FAC ¶¶97–110 alleges selective omission and replacement, not mere benefits opposition.

**F. Count VI alleges a disability-based hostile environment under the correct "severe or pervasive" test**

At Rule 12, Count VI must plausibly allege a qualified individual; unwelcome disability-based harassment; conduct severe or pervasive enough to alter employment conditions; and a basis to impute liability. Fox v. General Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). The Court assesses subjective and objective hostility under the totality. Id. at 178; Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). While the request was pending, Plaintiff alleges pressure to resign or accept lower-paid work, threatened termination by June, disability-related remarks, and work interference that caused an immediate symptom flare and mid-shift logoff. FAC ¶¶47–61, 66, 140–44.

Jessup is adverse authority: the Fourth Circuit affirmed summary judgment against an ADA hostile-environment claim after considering a transfer, poor evaluation, health-related "risk" comment, quota increase, and other remarks cumulatively. 23 F.4th 360, 367–69 (4th Cir. 2022). That Rule 56 record included internal communications Jessup did not know about. Here, the FAC alleges communicated disability-mocking remarks, a conditional termination warning, resignation/lower-pay pressure, and work interference. FAC ¶¶ 47–61, 66, 140–44. This factual and procedural distinction does not relax the objective severe-or-pervasive standard.

ECF 10 cites Count VI's conclusion paragraphs but does not analyze the incorporated events before asserting that 'Nothing in the FAC' would offend a reasonable person. ECF 10 at 12–13; FAC ¶¶47–61, 66.[3]

GEICO says Count VI fails absent "objectively intolerable" conditions, even if it intended to force Plaintiff out. ECF 10 at 13. But constructive discharge requires "something more" than a hostile-work-environment claim. *Evans v. International Paper Co.*, 936 F.3d 183, 192–93 (4th Cir. 2019); *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). Count VI instead asks whether the alleged harassment was severe or pervasive and objectively hostile or abusive; failure to meet the additional resignation-level threshold does not alone resolve that claim.

---

[3] The incorporated allegations include repeated resignation or lower-pay pressure and a June termination warning; Danny's 'gun to your head' remark, black-hair analogy, 'survey excuse,' and claimed ability to disprove a disability link; and HR's autism remark. FAC ¶¶51–56, 66. That categorical assertion necessarily includes these allegations; it implies that GEICO views even the alleged remarks and pressure, taken together, as not objectively offensive, yet ECF 10 offers no cumulative analysis.

**G. Count VII separately alleges constructive discharge caused by discrimination and retaliation**

Under the ADA, constructive discharge asks whether conditions became so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign. Kelly v. Town of Abingdon, 90 F.4th 158, 169 n.7 (4th Cir. 2024) (quoting Green v. Brennan, 578 U.S. 547, 555 (2016)); see also Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004). In the parallel Title VII and § 1981 context, the Fourth Circuit has held that, after Green, deliberateness is no longer a component of constructive discharge. Chapman v. Oakland Living Center, Inc., 48 F.4th 222, 235 (4th Cir. 2022). The FAC alleges more than a disappointing score or an ungranted transfer: it alleges closed application access, pressure toward unaffordable lower-paid work or resignation, a warning of termination if scores did not improve by June, escalating performance action, no effective internal route, severe psychiatric deterioration, exhausted leave, and a contemporaneous resignation letter identifying the conditions. FAC ¶¶ 47–78, 87–92, 145–49. These allegations support the objective compulsion inference; a separate inference that GEICO intended Plaintiff to resign is not required.

ECF 10 at 9 calls the May 12 departure Plaintiff's 'own decision to voluntarily resign,' but FAC alleges a different chain. After GEICO's accommodation response, lower-paid channeling, Danny's meeting, performance escalation, categorical denial, and failure to accommodate, his condition worsened. FAC ¶87. By May 12, he alleges suicidal thoughts, symptoms he recognized as pre-psychotic, exhausted FMLA and paid leave, a bathroom-use/discipline dilemma, and that another shift was unsafe. Id. ¶¶88–91. He says he resigned because of those conditions; his contemporaneous letter identified GEICO's lack of meaningful accommodation or process and the mental-health harm. Id. ¶¶92, 147–49. Rule 12

accepts underlying facts, not the legal conclusion of compulsion, and draws reasonable inferences for Plaintiff. Erickson, 551 U.S. at 94; Iqbal, 556 U.S. at 678. Their combined operation plausibly supports that a reasonable employee in his position would have felt compelled to resign; GEICO's 'voluntary' label presents a competing inference, not a Rule 12 resolution. Green, 578 U.S. at 555.

**H. Count VIII alleges coercion and interference under 42 U.S.C. § 12203(b)**

Section 12203(b) prohibits interference with ADA rights. The Fourth Circuit has not definitively adopted a test. In Kelly v. Town of Abingdon, 90 F.4th 158, 171 (4th Cir. 2024), it assumed without deciding the parties' proposed framework and dismissed because Kelly alleged neither steps aimed at preventing protected conduct nor discriminatory motive; hostility that aggravated symptoms was insufficient. Here, while the request remained pending, management allegedly told Plaintiff to assume denial and not apply, pressed resignation or lower-paid work, threatened termination and discipline, and Danny acknowledged the request was still pending. FAC ¶¶47–54, 152–53. The FAC alleges this pressure was reasonably likely to deter pursuit of accommodation and application access and that GEICO later preserved the barrier. Id. ¶¶49, 153. These allegations identify both the deterrent connection and disability-specific motive discussed below, the deficiencies Kelly found missing.

GEICO argues the FAC does not allege discriminatory intent. ECF 10 at 14. Count VIII incorporates facts supporting a disability-based motive: Mia allegedly contrasted an internet-role option for a deaf employee with Plaintiff's psychiatric disability; Danny used the black-hair analogy to suggest Plaintiff could change bipolar manifestations, called the explanation a "survey excuse," and said he could prove it was not the disability without medical or objective support. FAC ¶¶ 48, 53, 55–56.

Danny continued pressing resignation or lower-paid work while acknowledging the request was pending. Id. ¶¶ 51, 54. Paired with the disability-specific remarks, that pressure plausibly supports discriminatory motive under the test GEICO invokes; the inference rests on pleaded facts, not timing alone.

Count VIII also relies on the post-employment VEC allegations in ¶ 154, which should be assessed on their own allegations. The workplace conduct in ¶¶ 152–53 independently supports Count VIII and is separately alleged. The Court should assess that pleaded theory rather than say no coercion, threat, or interference is alleged; ECF 10 at 14 conflicts with the express allegations in ¶¶ 152–53.

**I. Count X states VHRA discrimination; GEICO's comparator argument is incomplete**

Count X invokes Va. Code § 2.2-3905(B)(1)(a)–(b) and (6). Subsection (B)(1)(a) prohibits discrimination in the terms, conditions, or privileges of employment because of disability; subsection (B)(1)(b) separately prohibits limiting, segregating, or classifying employees or applicants so as to deprive or tend to deprive employment opportunities; subsection (B)(6) prohibits using disability as a motivating factor for any employment practice, even when other factors also motivate it. The FAC alleges that GEICO classified Plaintiff through a disability-affected survey prerequisite, restricted advancement access, discouraged applications, and converted disability-linked customer reactions into discipline and termination risk. FAC ¶¶ 162–66.

GEICO argues that the claim fails because Plaintiff does not identify a similarly situated employee outside the protected group. ECF 10 at 9–10. FAC ¶¶32–46, 47–78, 164 allege decisionmaker statements, available exceptions, and adverse classification or opportunity denial.

Va. Code §2.2-3905(B)(1)(b), (6). Assess those allegations under the statute, not solely through comparator names.

**J. Count XI invokes Virginia's specific accommodation statute, not only general retaliation**

GEICO's footnote says §2.2-3905.1 has no retaliation claim and redirects to general VHRA §2.2-3905(B)(7)(i). ECF 10 at 10 n.7, 12. Count XI invokes separate state protections for accommodation, adverse action for requesting or using it, denial of employment or promotion because accommodation is required, and a timely, good-faith process. Va. Code §2.2-3905.1(B)(1)–(3), (5); FAC ¶¶167–172. It is distinct from Count V.

FAC ¶¶168–169 allege GEICO denied access to identified non-call-center openings because accommodation was required; Plaintiff sought only to compete, not guaranteed placement. Section 2.2-3905.1(B)(3) addresses denial of employment or promotion for that reason; (B)(1) concerns accommodation needed to perform a particular job. Id. ¶¶170–171 allege lower-pay pressure, no role-specific review, and no effective alternative. GEICO's ADA cases do not resolve those separate state duties or effectiveness and undue-hardship issues.

**V. DISMISSAL WITH PREJUDICE IS NOT JUSTIFIED; ALLOW A TARGETED AMENDMENT IF NEEDED**

GEICO seeks dismissal with prejudice because Plaintiff amended once. ECF 10 at 1 n.1. Rule 15(a)(2) favors leave when justice requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc). One amendment alone does not establish futility or prejudice.

Deny ECF 9 or grant focused leave if a curable deficiency remains. Assess each count under its own statute and allegations. Any amendment will comply with Rule 11. GEICO has not shown all eleven claims incurable.

Respectfully submitted,

Joseph L. Hickey III, Plaintiff pro se

7823 Richfield Road

Springfield, Virginia 22153

Telephone: (571) 800-7982

Email: hopelikefire1@gmail.com

Date: September 26 2026

**LOCAL CIVIL RULE 83.1(N) CERTIFICATION**

I declare under penalty of perjury that: (1) No attorney has prepared, or assisted in the preparation of this document.

Joseph L. Hickey III

Name of Pro Se Party (Print or Type)

Signature of Pro Se Party

Executed on: September 26 2026 (Date)

**CERTIFICATE OF SERVICE**

I certify that on September 26, 2026, I served a true copy of this Memorandum in Opposition on Defendant's counsel, Yvette V. Gatling and Benjamin P. Constine, Littler Mendelson, P.C., 1800 Tysons Boulevard, Suite 500, Tysons Corner, Virginia 22102, by [identify actual method; complete only after service]. US mail

Joseph L. Hickey III